IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA ex rel., )
JOHN D. DOAK, INSURANCE )
COMMISSIONER, AS RECEIVER FOR )
DRIVER'S INSURANCE COMPANY, )
                                                     )
                 Plaintiff, )
                                                     )
v.                                                  )           Case No. CIV-17-371-R
                                                       )
CTK ACTUARIAL SERVICES, INC., )
                                                      )
                 Defendant. )

## **ORDER**

Defendant, a California-based actuary company, moves to dismiss this suit based on lack of personal jurisdiction. Doc. 4. Plaintiff has responded. Doc. 6. Because this Court has personal jurisdiction over Defendant, its Motion is DENIED.

This is a professional negligence action arising out of work that Defendant CTK Actuarial Services, Inc. performed for Driver's Insurance Corporation (DIC), which prior to its insolvency wrote auto-insurance policies for high-risk drivers. Doc. 1, Ex. 4, at 1. The company is now in liquidation and under the administration of a Receiver, the Oklahoma Insurance Commissioner, John Doak, who brings this suit in his official capacity. Though DIC has its administrative headquarters in Duluth, Georgia, the company is domiciled in Oklahoma—meaning it was regulated by the Oklahoma Insurance Department. This agency requires each insurance company to have an appointed actuary in order to provide a Statement of Actuarial Opinion (SAO) on the reasonableness of the

1

insurance company's estimated reserves that the company includes in its year-end balance sheets. Doc. 6, at 4.

To satisfy this obligation, DIC retained CTK as its appointed actuary in order to analyze DIC's loss and Loss and Adjustment Expenses (LAE) reserves for the years 2008 through 2010. Doc. 1, Ex. 4, at 2. As an appointed actuary, CTK was tasked with grasping the ins and outs of DIC's business operations by relying on the financial information provided by DIC. Ideally, CTK would have then used this information to demonstrate DIC's solvency in the eyes of the Oklahoma Insurance Department.

That, though, did not take place. Instead, the Department identified several problems with DIC's accounting- and reserve-estimates and found that DIC was insolvent. *Id*. at 2. The OIC consequently placed DIC into receivership in January 2013. Plaintiff maintains DIC's insolvency was the result of CTK's services. In short, it argues that CTK incorrectly analyzed DIC's loss data and whether some of DIC's reinsurance contracts effectively transferred risk. Doc. 1, Ex. 4, at 4. All of this allegedly breached CTK's duty of professional care and resulted in specious reserve-estimates and serious monetary damages to DIC.

CTK, incorporated in and with its principal place of business in California, asks this Court to dismiss it for lack of personal jurisdiction; CTK apparently performed no actuary services in Oklahoma. DIC argues this is irrelevant: CTK understood the actuary reports it prepared would be used by Oklahoma regulators to evaluate DIC's solvency. Mindful that CTK lacks the more-traditional contacts with the forum state but aware that one court from

this district has already found personal jurisdiction in a similar scenario, the Court will deny Defendant's Motion to Dismiss.

Plaintiff bears the burden of establishing personal jurisdiction. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir. 2000). At the motion-to-dismiss stage, however, the Court resolves any factual disputes in favor of Plaintiff, and Plaintiff need only make a prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). To obtain personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir. 2000). Because Oklahoma permits the exercise of jurisdiction to the full extent allowed by the Constitution, the question is simply whether this Court's jurisdiction over CTK comports with due process. *Id*. A court may "exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923, 131 S.Ct. 2846 (2011) (quoting Inter*national Shoe Co. v. State of Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310, 316 66 S.Ct. 154 (1945)). Further, personal jurisdiction may be general or specific. *OMI Holdings. Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090–91 (10th Cir. 2010). Jurisdiction is general if it does not arise directly from a defendant's forum-related activities and is instead based on the defendant's "general business contacts

3

with the forum state." *Id*. at 1091. Conversely, jurisdiction is specific if the case itself arises out of or is related to the defendant's contacts with the forum state. *Id*.

With Plaintiff having apparently conceded that CTK is not subject to general jurisdiction, the Court concerns itself only with whether CTK has the requisite minimum contacts with Oklahoma to satisfy in personam specific jurisdiction. This minimum-contact standard requires, first, "that the out-of-state defendant must have 'purposefully directed' its activities at residents of [Oklahoma]." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174 (1985)). It also demands that "exercising personal jurisdiction over defendants . . . be consonant with traditional notions of fair play and substantial justice." *Id*. (quoting I*nt'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

CTK, which has no offices or employees in Oklahoma, argues minimum contacts with Oklahoma are missing. Its president Chester Kido met with DIC representatives not in Oklahoma but at DIC's administrative headquarters in Duluth, Georgia. Doc. 4, at 8. And these Georgia offices were where CTK sent invoices and received payment from. *Id*. Moreover, CTK sent the SAOs to DIC's offices in Georgia, not to the Oklahoma Insurance Department itself. *Id*. In fact, all dealings with DIC apparently took place between DIC's Georgia offices and CTK's principal place of business in Northridge, California. Doc. 4, at 9. Without these contacts, CTK argues, it can hardly be said that it purposefully availed itself of the privilege of conducting activities in Oklahoma.

Normally that might be so. But one federal court in this district has already found personal jurisdiction over an out-of-state defendant who contracted with an Oklahoma-

4

domiciled company to perform audits which it knew would be relied on by Oklahoma regulators. *See Oklahoma, ex rel. Doak v. Estate of Thornell,* No. CIV-12-0708-HE, 2012 WL 4758129, at *4 (W.D. Okla. Oct. 5, 2012). There, Pegasus, a corporation domiciled in Oklahoma but with its principal place of business in Alexander City, Alabama, retained an individual from that city to perform financial audits. *Id.* at *1. After these inaccurate financial statements failed to reveal Pegasus's true financial condition, Pegasus found itself in receivership. *Id.* The Oklahoma Insurance Commissioner then brought a negligence claim against the Alabama auditor in Oklahoma state court. *Id.* Upon removal, the court found that while she did not have any of the typical contacts that warrant personal jurisdiction, the Alabama auditor nonetheless subjected herself to specific personal jurisdiction in Oklahoma by preparing an audit report that she knew would be filed with and relied on by the Oklahoma Insurance Department:

> Plaintiff's claim arises out of [the auditor's] own affirmative actions, which created a connection with the State of Oklahoma, rather than merely those of Pegasus. The fact that she provided the audit to Pegasus and that Pegasus then submitted it to the OID is not determinative, in light of her knowledge of the intended use of the audit and its preparation specifically for the OID. She is not being required "to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov,* 514 F.3d at 1071 (quoting *Burger King,* 471 U.S. 475). *SeeLeedom Fin. Servs., LLC v. Geer & Assocs., P.C.,* 2010 WL 1852395 (M.D.Fl.2010). *An auditor who performs a regulatory audit for an Oklahoma corporation, which audit is specifically directed at compliance with Oklahoma's regulatory requirements, should reasonably anticipate the possibility of being "haled into court" there.*
>
> 2012 WL 4758129, at *4–5 (emphasis added).

Swap the auditor for the actuary and you end up with this case's facts. An out-of-state defendant, CTK, contracted with DIC, an Oklahoma-domiciled company regulated by the Oklahoma Insurance Department, to perform financial work that the defendant knew the Oklahoma Insurance Department would rely on. CTK, after all, noted that each actuary statement was "provided for regulatory purposes only," acknowledged the Oklahoma Insurance Department could request the statements, directed DIC to retain the actuarial reports for seven years, and instructed DIC to make the reports available to regulating bodies upon request. Doc. 1, Ex. 4, at 2–3; Doc. 6, at 4. In effect, "[CTK] knew that the Oklahoma Insurance Commission had a special interest in, and obligation with respect to, [DIC's] financial stability." *Thornell*, 2012 WL 4758129, at *4. CTK therefore purposefully availed itself of an Oklahoma forum because "[p]urposeful availment requires actions by the Defendant which create a substantial connection with the forum state." *OMI Holdings*, 149 F.3d at 1092 (10th Cir. 1998) (quotes omitted); *also see Leedom Fin. Servs., LLC v. Geer & Assocs., P.C.*, No. 8:10-CV-917-T-23EAJ, 2010 WL 1852395, at *2 (M.D. Fla. May 7, 2010) (finding personal jurisdiction over non-resident auditors because they "(1) provided an audit report for the benefit of the plaintiff in [the forum] and (2) knew that the plaintiff would rely on the audit report in [the forum]"); *and N.Y. State Workers' Comp. Bd. v. Consol. Risk Servs., Inc.*, 40 Misc. 3d 1232(A), 977 N.Y.S.2d 668 (N.Y. Sup. 2013) (finding personal jurisdiction in New York over out-of-state defendant because defendant had "purposefully interjected itself into [New York] by preparing actuarial reports for a New York group self-insured trust in accordance with New York State regulations where the actuary knew that the reports would be filed with a New York regulatory agency).

Because CTK purposefully availed itself of the privilege of conducting activities within Oklahoma, the question becomes whether that "litigation results from alleged injuries that arise out of or relate to those activities." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (quotes and cites omitted). "Many courts have interpreted this language to require some sort of causal connection between a defendant's contacts and the suit at issue." *Dudnikov*, 514 F.3d at 1078. "Some courts have interpreted the phrase 'arise out of' as endorsing a theory of 'but-for' causation . . . while other courts have required proximate cause to support the exercise of specific jurisdiction." *Id*. A third standard asks whether there is a substantial connection or discernible relationship between the contacts and the suit. *Id*. While the Tenth Circuit has disavowed this "substantial-connection test," it has used both the "but-for" and "proximate-cause" tests. *See, e.g., id*. at 1079. The alleged facts satisfy either of those two tests: But for CTK preparing an actuary report to place DIC in compliance with Oklahoma regulators, DIC would have no professional negligence claim against CTK; and or the same reasons, CTK's alleged actions were the proximate cause of DIC's financial woes.

Having decided that plaintiff has met his burden of establishing personal jurisdiction, the Court "must still inquire whether the exercise of personal jurisdiction would 'offend traditional notions of fair play and substantial justice.'" *Id.* at 1080 (*quoting Int'l Shoe*, 326 U.S. at 316 (internal quotes omitted)). In deciding this, courts traditionally consider

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial

7

> system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.
>
> *Id*.

That said, 'where a defendant seeks to defeat jurisdiction, it must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (ellipsis and brackets omitted). CTK has not raised these points, and the Court does not see any reason why they would weigh against subjecting CTK to jurisdiction here. Plaintiff's Motion to Dismiss, Doc. 4, is therefore DENIED.

IT IS SO ORDERED this 25th day of May 2017.

*David L. Russell* (signature)
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE